J-A08008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.S.K., MOTHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.A.J., FATHER | : | |
| | : | |
| Appellant | : | No. 3844 EDA 2017 |

Appeal from the Order Entered November 3, 2017
In the Court of Common Pleas of Lehigh County
Civil Division at No(s):  No. 2017-FC-0464

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J.                    **FILED MAY 15, 2018**

Appellant, R.A.J. ("Father"), files this appeal from the order entered

November 3, 2017,[1] in the Lehigh County Court of Common Pleas, awarding

T.S.K. ("Mother") primary physical custody and Father partial physical custody

_____

* Retired Senior Judge assigned to the Superior Court.

[1] While the docket reflects that the order was dated and filed November 2, 2017, review of the order indicates a date of October 2, 2017. The date on the order is typewritten in part and handwritten in part.

The lower court prothonotary did not provide notice pursuant to Pa.R.C.P. 236(b) until November 3, 2017. Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999). We have corrected the appeals statement of the caption accordingly.

of their minor son, W.J., born in January 2010 ("Child"). The court additionally awarded the parties shared legal custody. We affirm.

Child was born to Mother and Father, who were not married, in January 2010. Although Mother and Father, who had been engaged, separated in September 2016, Father continued to reside with Mother and Child until March 2017. On March 30, 2017, Mother filed a petition under the Protection from Abuse Act ("PFAA"), 23 Pa.C.S.A. § 6101, *et seq.*, and was granted a temporary ex *parte* order, which evicted Father from the home. Upon being served with the order on March 31, 2017, Father absconded with Child for five days.[2] After a hearing, on April 6, 2017, a final order was entered against Father for a period of eighteen months.[3]

Mother additionally filed a Complaint for Custody on March 31, 2017.[4] Subsequent to a custody conference, on May 10, 2017, an interim order was entered by agreement pending further order. Pursuant to this order, Mother was granted primary physical custody and Father partial physical custody of Child. Notably, Father was granted physical custody on alternate weekends

_____

[2] Father testified that, as he was home alone with Child when served, he had no other choice but to take Child with him. He further stated that he advised the police of his location when contacted the following day.

[3] Father admitted that he was found to be in contempt of this order on two occasions.

[4] Mother also filed a Petition for Emergency/Special Relief on March 31, 2017 because of Father absconding with Child, which resulted in an interim order entered on April 21, 2017.

from Friday after school until Sunday at 6:00 p.m., alternate Fridays after school until 8:00 p.m., and alternate Mondays after school until 7:00 p.m.

The trial court conducted hearings on August 17, 2017, and September 5, 2017.[5] Mother and Father, represented by counsel, each testified on their own behalf. In addition, Mother presented the testimony of her mother, D.H.; her stepfather, H.H.; and her friend, D.R. Father presented the testimony of Mother's sisters, M.B. and C.M.; Mother's ex-husband, J.K., Sr.; and his friends M.D., V.P., L.P., and K.B.

Pursuant to an order entered November 3, 2017, the court awarded the parties shared legal custody and Mother primary physical custody of the child. The court further awarded Father partial physical custody the first three full weekends of every month from Friday at 9:00 a.m. to Sunday at 7:00 p.m. In addition, the court established a holiday and vacation schedule.

Father, through counsel,[6] filed a notice of appeal. Thereafter, on December 8, 2017, Father filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[7] The trial court issued

_____

[5] In the interim, Father filed numerous petitions for contempt.

[6] New counsel represents Father on appeal.

[7] As Father filed a statement just over one week after he filed his notice of appeal and there is no assertion of any prejudice, we decline to deem his issues waived. **See In re K.T.E.L.**, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that the appellant's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

a Statement of Reasons Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), directing attention to its Analysis of Factors in its November 3 order.

On appeal, Father raises the following issues for our review:

> A. Whether the trial court abused its discretion in awarding primary physical custody of the minor child to Mother?
>
> B. Whether the trial court erred in finding that Mother had met burden pursuant to the factors set forth in 23 Pa.C.S.[] § 5328(a)?

Father's Brief, at 4.[8]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature

---

[8] We observe that Father states his issues somewhat differently than in his Rule 1925(b) statement. We, nevertheless, find that Father has preserved his challenges to the trial court's custody order as set forth here from the Statement of Questions Involved section of his brief.

of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. ***See*** 23 Pa.C.S. §§ 5328, 5338. Section 5323(a) of the Act provides for the types of custody awards. And § 5328(a)(1)-(16) sets forth the best interest factors that the trial court must consider in doing so. ***See E.D. v. M.P.***, 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011).

Further, with regard to the custody,

**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order. . . . The record must be clear on appeal that the trial court considered all the factors.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior

to the deadline by which a litigant must file a notice of appeal. . . .

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (some internal citations

and quotation marks omitted; brackets in orignal).

In its order, the trial court carefully analyzed and addressed each

custody factor and the Child's best interests as follows:

ANALYSIS OF FACTORS

. . .

1.  Which party is more likely to encourage and permit frequent and continuing contact between the [c]hild and another party.

Both parties seem to fall short in the application of this factor. They both seem to think they are being generous with the other parent and the child's time, but the evidence does not seem to support this feeling. According to Mother, on March 31st Dad took off with [C]hild for 5 days after being served with a PFA order. He would let [C]hild call the Mother but instructed the child not to say where they were. When Father calls [Child] at Mother's, the calls are not always successful. Mother claims [Child] refuses to speak to Father at times. Mother says she attempts to cooperate with Father in his rescheduling requests and says that Dad threatened to keep son away from her. Father also says that the child refuses to speak to him when the child is with his maternal grandparents, and that Mother and her parents play games.

2.  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the [c]hild or an abused party and which party can better provide adequate physical safeguards and supervision of the [c]hild. . . .

Both parties had hints and allegations of the abusive nature of the other party. Mother did obtain a PFA order against Father after a hearing on April 6, 2017, which pertained only to Mother and was ordered for the period of 1 1/2 years. Mother claims that Father has continually violated the PFA. He has been found in contempt of the PFA order twice. Mother says that things have now improved. Father had slim evidence of abuse by Mother.He claimed there was an incident in the [s]ummer of 2015 where she drank alcohol and then drove with [Child] in the car. He claims in Christmas of 2016, Mother struck her own mother at a family party, an incident which was denied by [M]other's loyal family members. There is no evidence of either party being physically abusive to the child.[9]

3. The parental duties performed by each party on behalf of the [c]hild. . . .

Mother claims she was the primary caregiver. Father claims he picked the child up from school every day but one last year. It appears that the parties did share in the child's care while they lived together.

4. The need for stability and continuity in the [c]hild's education, family life and community life. . . .

[Child] was born in 2010 and has lived in the family home all his life. [Child] is starting second grade. Father objects to [M]aternal [G]randparents doing babysitting. He claims mother drinks, smokes, uses Facebook excessively and is unstable. Father has repeatedly asked for variations in temporary custody order, and filed repeated petitions for contempt. Also[,] [F]ather has made a spurious claim that [M]aternal [G]randfather was sexually abusing the child.

5. The availability of extended family.

Mother has a larger and more accessible extended family.

6. The children's sibling relationships.

Mother has a son, [J.M.], with another man. The child is 16 years old, and lives primarily with his [f]ather. While it is nice to have

_____

[9] The court combines factors 2 and 2.1.

siblings, the vast age difference and the fact that [J.M.] doesn't reside with this child's [m]other, does not particularly influence a custodial decision in this case.

7. The well-reasoned preference of the [c]hild, based on the [c]hild's maturity and judgment.

I did not interview the child.[10]

8. The attempts of a parent to turn the [c]hild against the other parent (except in cases of domestic violence where reasonable safety measures are necessary to protect the [c]hild from harm).

Dad is objecting to Maternal Grandparents being with the child. He claims they "entice" him into basement with candy. Apparently, two years ago, Father saw [M]aternal [G]randfather greet the child with a kiss on the lips. It was only during their custody litigation that this became an issue, with Father filing it as a reason for a petition for emergency custody. Father is openly critical of Mother to the child. We suspect Mother is likewise critical of Father, although perhaps not so openly.

9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with [the c]hild adequate for the [c]hild's emotional needs[.]

Mother says Father is angry, negative, and antisocial. Maternal step grandfather reports Dad is short-tempered with child, and demeaning to Mother in front of the child. Father called Mother['s] two sisters to testify that Mother is short tempered, but they were

_____

[10] In his brief, Father additionally argues that the trial court abused its discretion for failure to interview Child. **See** Father's Brief at 17-18. Father raises this argument for the first time on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

In any event, we find Father's argument is without merit. Pennsylvania Rule of Civil Procedure 1915.11(b) is discretionary and does not mandate that a trial court interview a child in a custody matter. Pa.R.C.P. 1915.11(b) (stating, in part, "The court may interview a child, whether or not the child is the subject of the action. . . .") Also, we observe that testimony as to Child's preference was offered by each of the parties. **See** N.T., 8/17/17, at 81; N.T., 10/6/17, at 23-24.

not very forthcoming. Mother's ex-husband, and the father of their 16[-]year[-]old son[,] [J.], testified that their mutual son can visit her any time he wants. [V.P.], a friend, says Dad is dependable, never angry with his son. There were several more witnesses on both sides, who vouched for the goodness of their particular candidate. We tend to believe all and none of these witnesses. We do not doubt that both parents are loving toward the child, but we also do not doubt that Mother has an impulsive streak and Father has an impatient streak. It was evident in their courtroom demeanor, and the history of this case.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the [c]hild[]. . . [.]

We think both parents are equally capable of this.

11. The proximity of the residences of the parties.

Father and Mother live 1/2 mile from each other. Both reside in the Catasauqua School District.

12. Each party's availability to care for the [c]hild or ability to make appropriate childcare arrangements.

Mom drives for special needs children and works hours 7:00 a.m. to 4:00 p.m. Father is an installer and works 9:00 a.m. to 2:00 p.m.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. []A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party[.] . . .

The level of conflict is extremely high and each parent blames the other for the high conflict. Both parents are correct. They are both immature and want complete possession of the child. There was little testimony about the child's nature and needs. The testimony as a whole presented a picture of two parents trying to exclude the other.

14. The history of drug or alcohol abuse of a party of member of a party's household.

Other than bald accusations, there is no reliable evidence of the parties abusing drugs or alcohol.

15. The mental and physical condition of a party or a member of a party's household. . . .

Mother was diagnosed with bipolar disorder in 2002, and has been compliant with treatment. However, there is much in the testimony for the court to believe that her treatment of this illness is not completely successful. Father is just plain mean and nasty about Mother. He views her with contempt and makes no effort to hide it. Poor [Child].

We believe that both parents are capable of raising [Child] and providing him with all the love and attention he needs with one exception. Neither one seems willing or able to allow him to like, love, or trust, the other parent. It doesn't much matter what parent tucks him in, or cooks his meals, or helps him with his homework, if that parent is going to be constantly exposing the child to disdain for the other parent.

In this instance, we feel that Father has been the aggressor in trying to win possession of [Child] by taking him following a PFA order, by telling the child to ask Mommy for 50-50 custody, by exaggerating maternal grandfather's behavior to [Child] and by violating the PFA order. On the whole, it might be best for [Child] ultimately to go to shared physical custody, because both of these parents have rather finite views of what it means to parent. But we cannot do that at this time, until Father has proven that he can accept the authority of the court, and that he can bow to the necessity of treating Mother with some respect.

Order, 11/3/17, at 7-13.

Turning to Father's issues raised on appeal, Father first asserts that the trial court erred or abused its discretion in disregarding competent and credible evidence of record in its award of primary physical custody to Mother. Father argues, "Careful review of the record shows that the [t]rial [c]ourt simply ignored or mischaracterized voluminous and credible evidence in order to reach this conclusion. Moreover, the conclusion completely disregards the

best interest of the child." Father's Brief, at 7. Father challenges the trial court's assessment of the evidence, including weight and credibility, in favor of an appraisal more sympathetic to him. He references evidence as to Mother's emotional instability and alleged alcohol abuse. And he points to evidence as to his positive relationship with Child and his good character, as well as offers context as to his concerns with Mother's mother and stepfather.

Relatedly, Father next contends that the trial court improperly considered the factors set forth in § 5328(a). In so arguing, Father reviews thirteen of the sixteen factors, which he maintains the court "failed to address and or failed to analyze properly in light of the evidence of record." *Id.*, at 18-25. Father again challenges the trial court's assessment of the evidence, including weight and credibility, with regard to these factors.

As mentioned, the court is required to consider all of the § 5328(a) factors in entering a custody order. Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to § 5328(a), the amount of weight a court gives any one factor is almost entirely discretionary. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). Critically, as stated in *M.J.M.*:

> *It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.* *See A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

*Id*. (emphasis added).

As we construe Father's claims on appeal, we interpret the issues raised at their core as disputes to the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Father, in essence, questions the trial court's conclusions and assessments and seeks this court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence. This we cannot do.

Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. As we stated:

> It is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, based on the evidence presented, giv[ing] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in awarding custody to the prevailing party.

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (citation and some internal quotation marks omitted). *See also M.J.M.*, 63 A.3d at 339.

After a thorough review of the record, we find no abuse of discretion. Further, to the extent Father challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. The court reasonably analyzed and addressed each factor under § 5328(a). *See* Order, 11/3/17, at 13. The trial court's findings and determinations regarding the custody factors

set forth in § 5328(a) are supported by competent evidence in the record, and we will not disturb them.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/18